Daniel CALLAGHAN, Appellant

v.

HAVERFORD TOWNSHIP.

No. 08–2868.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 14, 2009.

Filed: Sept. 21, 2009.

Shelly G. Farber, Esq., Farber & Farber, Broomall, PA, for Appellant.

Suzanne McDonough, Esq., Holsten & Associates, Media, PA, for Haverford Township.

Before: SLOVITER, FUENTES, and SMITH, Circuit Judges.

## OPINION

SLOVITER, Circuit Judge.

Appellant Daniel Callaghan appeals the District Court's grant of summary judgment to appellee Haverford Township ("Township") on his claims under the Americans with Disabilities Act (ADA) and the Pennsylvania Whistleblower Law.[1]

## I.

Callaghan began working for the Township in 1991, and by 1994 he was a "crew leader" who oversaw five to fifteen employees maintaining open fields and areas along roadways in the Township. In February 2005, at the direction of his physician, Callaghan took a leave of absence from that job because he was suffering from work-related stress and his diabetes was worsening. Callaghan claims that he experienced stress on the job because the employees that he supervised were unfit

---

1. The District Court had jurisdiction over Callaghan's ADA claim under 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claim under 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment de novo.

for duty, and that his concerns were ignored and disparaged by his supervisor, Michael English. Callaghan's physician cleared him to return to work in March 2005, but instructed him to avoid stress and confrontation.

Upon his return to work, Callaghan was provided a choice to work as a painter or to assist the (temporary) highway inspector, Robert Lawson. He chose to work with Lawson. After about two or three weeks, he was reassigned to work alone filling potholes.

Callaghan claims he suffered additional stress when his supervisor, Charles Falance, told a Township employee that Callaghan "won't be filling potholes much longer." App. at 103. His physician allegedly again recommended that he take a leave of absence. His physician also wrote a letter to the Township on August 9, 2005, which stated that Callaghan was "being treated for anxiety and depression related to his work" and that he "should be transferred to a less stressful situation" because the stress was "making his diabetes poorly controlled." Supp.App. at 250. Callaghan returned to work in August 2005 and was reassigned again to a position in which he checked landscapers for proper licensing.

Callaghan contends that shortly after his return to work one of the Township commissioners told him to inform English that Lawson had previously been convicted of driving under the influence (DUI) and should not be assigned to the highway inspector position. Callaghan passed on this information to English. Around this same time in the late summer or early fall of 2005, Callaghan also reported to his supervisors that playground equipment in the Township was not properly inspected, that a Township employee had operated a snow plow truck without a proper license (although the offending employee had already been suspended on this ground), and

that another Township employee was using pesticides without a proper license.

In October 2005, Callaghan applied for a full-time, permanent position for highway inspector. He refused to attend the interview for the position because he believed that the Township's hiring procedure violated his union contract.

At the direction of the Township, Callaghan saw Dr. Marilyn Howarth for an independent medical evaluation. Dr. Howarth reported to the Township that Callaghan "has had a number of medical problems, which I believe have combined to make him currently unable to perform his work duties." App. at 46. Callaghan was then placed on short-term disability. Dr. Howarth also recommended that Callaghan see a psychiatrist. He did so in November 2005, and his psychiatrist concluded that he should not return to work because of stress. Callaghan contends that in the summer of 2006, while he remained on leave, he was informed that Falance was telling other Township employees that Callaghan was "nuts" and "crazy." Supp.App. at 66.

Although none of his treating physicians stated that he was unable to work at all, several did recommend that Callaghan be transferred to another department within the Township and/or receive medical treatment, including continuing mental health care. His psychiatrist diagnosed Callaghan with chronic depression and anxiety, and never released Callaghan for work or informed the Township of his limitations. Callaghan requested that the Township provide his physicians with job descriptions for available positions, but the Township failed do so.

Callaghan did not thereafter return to work for the Township, and after expiration of his sick leave and leave under the Family Medical Leave Act, the Township terminated his employment on September

22, 2006. In February 2007, Callaghan obtained a job at the Philadelphia airport.

Callaghan filed this action in November 2006, alleging that the Township discriminated against him based on an actual or perceived disability in violation of the ADA and retaliated against him for whistleblowing in violation of the Pennsylvania Whistleblower Law. Following cross-motions for summary judgment, the District Court granted summary judgment to the Township on both claims.

## II.

■ Callaghan first challenges the District Court's conclusion that he was not disabled or perceived to be disabled for purposes of the ADA. The ADA prohibits an employer from discriminating against a qualified individual on the basis of a disability. *See* 42 U.S.C. § 12112(a). The term disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102.

Here, the only major life activity relevant is that of "working." A person is substantially limited in the major life activity of working if s/he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3).

Callaghan contends that he raised a genuine issue of material fact as to whether he is disabled under the ADA because his treating physicians advised that he cannot tolerate work-related stress due to his chronic anxiety and diabetes, and that this limitation would restrict his ability to perform a broad range of jobs. However, none of his treating physicians stated that Callaghan was restricted from working a broad range of jobs. Quite the contrary; they stated that he could return to work for the Township provided that he was transferred to another department outside the supervision of the management personnel who had caused Callaghan's stress and that he received continuing medical and mental health care. *Cf. Aldrup v. Caldera,* 274 F.3d 282, 287 (5th Cir.2001) (holding that plaintiff was not disabled under ADA where he alleged that he suffered depression caused by the stress of having to work with certain individuals because such allegations "would merely tend to show that he was unable to perform any job at one specific location, and is not evidence of [an] inability to perform a broad class of jobs").

Further, Callaghan testified at his deposition that he could return to work in a position other than his crew leader assignment or even as a crew leader if he was promoted. He was also able to obtain new employment. Thus, we agree with the District Court that Callaghan was not disabled.

■ Callaghan next contends that the District Court erred in concluding that the Township did not regard him as disabled. An individual is regarded as disabled if either "(1) despite having no impairment at all, the employer erroneously believes that the plaintiff has an impairment that substantially limits major life activities; or (2) the plaintiff has a nonlimiting impairment that the employer mistakenly believes limits its major life activities." *Tice v. Centre Area Transp. Auth.,* 247 F.3d 506, 514 (3d Cir.2001).

As evidence that the Township regarded him as disabled, Callaghan points to the facts that the Township ordered him to undergo an independent medical exam and "stonewalled" his requests that the Town-

ship provide descriptions of available jobs to his physicians to allow them to evaluate his ability to fulfill those jobs. However, we have held that independent medical examinations, such as the one to which Callaghan was subjected, are permitted under the ADA and therefore "will never, in the absence of other evidence, be sufficient to demonstrate that an employer 'regarded' the employee as substantially limited in a major life activity." *Tice,* 247 F.3d at 515.

As to Callaghan's contention that the Township blocked his attempts to return to work in 2006, the District Court had evidence before it that there was a mutual breakdown in communications at this time. In any event, we fail to see how the Township's alleged failure to provide job descriptions to Callaghan's physicians even remotely suggests that it regarded him as disabled. Indeed, we agree with the District Court that the Township's response to the submissions of Callaghan's physicians, including its earlier efforts to place Callaghan in a less-stressful position, "indicate that the Township believed Callaghan could perform jobs other than crew leader." App. at 13.

■■■■ Finally, Callaghan contends that the District Court erred in rejecting his state law whistleblower claim. Under the Pennsylvania Whistleblower Law, "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee ... because the employee ... makes a good faith report ... to the employer ... of wrongdoing or waste." 43 Pa. Stat. Ann. § 1423(a). To prevail on his claim, Callaghan "must come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts." *O'Rourke v. Commonwealth,* 566 Pa. 161, 778 A.2d 1194, 1200 (2001).

We agree with the District Court that Callaghan failed to do so here because a significant period of time (at least eleven months) lapsed between the alleged acts of whistleblowing and his termination. *Cf. Lutz v. Springettsbury Twp.,* 667 A.2d 251, 254 (Pa.Commw.Ct.1995) (rejecting whistleblower claim where employee was terminated several months after report of wrongdoing and there was no other evidence to connect the report and termination). Callaghan contends that the Township retaliated by altering his terms of employment well-prior to his termination. In support, he points to several factors, including his supervisors' alleged failure to address his complaint that the employees he supervised as crew leader were unfit for duty (which did not materially affect the terms of Callaghan's employment). *See O'Rourke,* 778 A.2d at 1197–99 (concluding that petty acts of intimidation and harassment by supervisors did not constitute retaliation against employee's terms of employment). He also points to the Township's order that he undergo an independent medical exam (which, as noted above, it was legally entitled to require), and the Township's alleged failure to provide job descriptions to his physicians to allow them to evaluate whether he could return to work (which, again, was part of a mutual breakdown in communications). Callaghan simply fails to present any evidence that these acts by the Township, or his termination, were retaliation for his reports of alleged wrongdoing.

### III.

For the above-stated reasons, we will affirm the District Court's grant of summary judgment to Haverford Township.